```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

JGCA Holding Corp.,
d/b/a Great North Property
Management, Inc.

    v.                                Civil No. 09-cv-358-JD
                                                    Opinion No. 2010 DNH 003

Chris McCarthy and
Riney Management Corp.

                                   O R D E R

JGCA Holding Corp., doing business as Great North Property Management, Inc. ("Great North"), brought an action in Rockingham County Superior Court against Chris McCarthy and Riney Management Corporation alleging, inter alia, breach of McCarthy's employment contract with Great North and violation of New Hampshire Revised Statutes ("RSA") § 358-A. The defendants timely removed the action to this court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, thereby invoking this court's diversity jurisdiction. Great North has moved to remand the suit to the state court, arguing that the amount in controversy does not exceed $75,000, and that therefore this court lacks subject matter jurisdiction.

Standard of Review

The defendants argue that this court has jurisdiction under 28 U.S.C. § 1332(a)(1) (2009), which requires that "the matter in controversy exceed[] the sum or value of $75,000" and be "between citizens of different States." The diversity of citizenship is undisputed in this case, but Great North contends that the amount in controversy requirement is not met. "The removal statute does not in itself create jurisdiction," but rather the "[removing] defendants have the burden of showing the federal court's jurisdiction." Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999); see also Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009) ("The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case.").

Where, as here, the complaint does not state an amount of damages on its face, this court "has required the defendant to show by a preponderance of the evidence that the amount in controversy [is at least as great as] the figure necessary for federal diversity jurisdiction." Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 220 (D.N.H. 2004) (collecting cases).[1] The

---

[1]Although the First Circuit has not definitively described the appropriate standard of proof, "the majority of circuits that have addressed this question . . . require that a defendant establish the jurisdictional amount by a preponderance of the

defendants may do so by relying not only on the facts alleged in the complaint, but also on "summary-judgment-type evidence," including "the notice of removal and any other materials submitted by the removing defendant[s]." Id. (quotations omitted).[2]

## Discussion

Great North, a New Hampshire company that manages property and provides support services to condominium associations, among others, alleges in its complaint that McCarthy worked as a Great North property manager from August 2004 until approximately August 21, 2009. During that time, Great North asserts, McCarthy had access to Great North's customers and clients, as well as its

---

evidence." Tremblay v. Philip Morris, Inc., 231 F. Supp. 2d 411, 414 n.2 (D.N.H. 2002) (quotation omitted). The First Circuit has decided, in a closely related context, that a defendant invoking a federal court's jurisdiction under the Class Action Fairness Act of 2005 must show "a reasonable probability" that jurisdiction exists. Amoche, 556 F.3d at 48. The Amoche court also explained that "the reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits." Id. at 50. Moreover, in this case, the parties apparently agree that the preponderance of the evidence standard is correct.

[2]The defendants have referred to the allegations in Great North's complaint and statements in the affidavit of Kevin Riney, attached to the defendants' opposition to the motion to remand. Therefore, the facts discussed below originate from those sources.

confidential and proprietary information.  At the time he was hired, McCarthy allegedly signed a Contract of Employment, one provision of which stated that he

> agrees that [he] will not while in Great North Property Management, Inc.'s employ nor within twenty-four (24) months following termination of employment for any cause whatsoever, directly or indirectly, engage in any property management or property sales business for [himself] or in association in any capacity with any other person or firm engaged in a similar business to [Great North] within a radius of thirty-five (35) miles of [Great North] office [sic] or within a radius of thirty-five (35) miles of any city in which [Great North] manages property . . . nor will [McCarthy] give to any other person or firm the benefit or advantage of . . . knowledge, information and experience acquired by [McCarthy] while employed by [Great North].

Contract of Employment ¶ 4, attached to Compl.  In the complaint, Great North states that sometime after leaving Great North, McCarthy began working for Riney Management, Great North's direct competitor.  According to Great North, Riney Management knew the terms of McCarthy's Great North contract, including the restrictive covenants limiting his employment within twenty-four months of his leaving Great North.

Great North alleges that on approximately September 1, 2009, Milestone Condominium Association, a fourteen-year client of Great North, terminated its relationship with Great North and hired Riney Management.  Similarly, Grand Manor Condominium Association, a thirteen-year client of Great North, said it was

leaving Great North effective November 1, 2009, and would be going to Riney Management.  Great North also asserts that McCarthy has actively solicited at least two other Great North clients, Hitching Post and Winding Brook Condominiums, on behalf of Riney Management.

Although the complaint does not set forth distinct causes of action, it appears to allege, inter alia, breach of the Contract of Employment, unfair competition and deceptive business acts or practices in violation of RSA § 358-A, and intentional interference with Great North's business relationships.  Great North asks for relief in the form of preliminary and permanent injunctions, prohibiting contact with Great North clients; repayment of lost revenue; "as much as 3 times, but not less than 2 times" Great North's damages, pursuant to § 358-A:10(I); and attorneys' fees and costs.

After the defendants removed the case to this court, Great North moved to remand to state court on the grounds that the amount in controversy is not greater than $75,000, as required by § 1332(a).  In support of its motion, Great North states that it "believes the amount in controversy is less than Seventy Five Thousand Dollars," making removal under § 1332 "clearly impermissible."  Pl.'s Mot. ¶¶ 6-7.

The defendants object to remand and filed an affidavit from Kevin Riney, the president and owner of Riney Management. Riney states that the annual base management fee a property management company would receive for serving Milestone Condominium Association is approximately $9,000 and that the fee for Grand Manor Condominium Association is approximately $15,000.[3]

Great North alleges that it is entitled to repayment of its lost revenue, which would include $9,000 per year for Milestone

---

[3] Riney also states that the fee for providing property management services to Winding Brook Condominium Association is approximately $58,000. Because Great North alleges only that the defendants have solicited Winding Brook, and requests an injunction against this alleged interference with its business relationships, Riney's valuation is based on the defendants' viewpoint of the value of the injunction. That is, if an injunction were to issue, the defendants would lose the opportunity to form a contract with Winding Brook worth $58,000. Courts are split on whether the value of an injunction can be determined by looking only to the potential benefit to the plaintiff, or also to the potential harm to the defendant. See, e.g., In re M3Power Razor Sys. Mktg. & Sales Practices Litig., Nos. 05-11177-DPW & 05-12336-DPW, 2007 WL 128846, at *4 (D. Mass. 2007); 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3703 (3d ed. 2009) (collecting cases). While the First Circuit has stated that the amount in controversy should be "'measured by the value of the object of the litigation,'" not simply the "monetary judgment which the plaintiff may recover," the court has not explicitly endorsed the defendants' approach. Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004) (quoting Hunt v. Wash. Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Here, however, the court need not resolve the issue because the amount in controversy can be shown to be greater than $75,000 even without including the value of the Winding Brook contract.

and $15,000 per year for Grand Manor -- the two clients that have already allegedly left Great North for Riney Management. Based on their long-standing relationships and the two-year period of the restrictive covenants in the Contract of Employment, it is reasonable to conclude that Great North would claim two years' worth of lost revenue from its two former clients. The amount claimed based on the loss of the Milestone and Grand Manor contracts would be $24,000 per year, or $48,000 total.

Great North's complaint also alleges violations of RSA § 358-A, New Hampshire's Consumer Protection Act, which allows the court to award between two and three times the amount of actual damages in cases of willful or knowing violations of the statute. N.H. RSA § 358-A:10(I). Great North's Consumer Protection Act claim could amount to between $96,000 and $144,000 in damages, which satisfies the amount in controversy requirement of § 1332.

Because Great North's complaint alleges specific instances of wrongdoing and the defendants have submitted evidence of the amounts in question, and because Great North alleges a violation of § 358-A, the defendants have shown by a preponderance of the evidence that the amount in controversy is greater than $75,000. Therefore, this case falls under the court's diversity jurisdiction.

<u>Conclusion</u>

For the foregoing reasons, Great North's motion to remand (document no. 3) is denied.

SO ORDERED.

                                        /s/ Joseph A. DiClerico, Jr.
                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

January 6, 2010

cc:  John K. Bosen, Esquire
     William E. Hannum, III, Esquire